ESTHER BRUNER *et al.* V. JENNIE S. MARTIN.

No. 15,251.   (93 Pac. 165.)

SYLLABUS BY THE COURT.

1. WORDS AND PHRASES—*Cause of Action*—"*Arisen*" *and* "*Accrued*" *are Synonymous*. The words "where the cause of action has *arisen* in another state," as used in the statute of limitations (Code, § 22; Gen. Stat. 1901, § 4450), mean when the cause of action has *accrued* in a foreign state, or, in other words, when the plaintiff has the right to sue the defendant in the courts of such foreign state; and they have no reference to the origin of the transaction out of which the cause of action arose.

2. LIMITATION OF ACTIONS—*Conflict of Laws*. An action on a promissory note cannot be maintained here under section 22 of the code of civil procedure where both the plaintiff and the defendant were non-residents of Kansas when the cause of action accrued and the defendant resided in a foreign state until the cause of action was barred by the laws of that state.

Error from Meade district court; EDWARD H. MADISON, judge.   Opinion filed December 7, 1907.   Reversed.

*George A. Vandeveer, F. L. Martin,* and *E. L. Foulke,* for plaintiffs in error.

*Francis C. Price,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: This suit was brought by Jennie S. Martin against Esther Bruner and others to foreclose a mortgage on real estate. A judgment was rendered for the plaintiff, and the defendants bring these proceedings in error.

The sole question involves the construction of the statute of limitations. There was a stipulation as to the facts, from which it appears that the plaintiff resides in New Jersey and has never been a resident of Kansas. She acquired the note and mortgage by purchase from another non-resident. The note and mort-

gage were executed in Kansas, July 2, 1888, by Charles. and Lucy B. Veatch, husband and wife, who were the owners of the real estate. The note was payable five years after date, at the city of New York, to the Kansas & New Jersey Loan Company, a Kansas corporation, and contained a clause providing that it should be construed in all respects according to the laws of Kansas. The mortgage was duly recorded in Meade county, Kansas, where the land is situated. It contained the usual conditions. In 1890, before the maturity of the note, Charles Veatch and wife, makers of the note and mortgage, conveyed the real estate to Francis M. Bruner and removed to the state of Missouri, where they have since resided, and they have never since returned to or been within this state.

The note and mortgage were before maturity indorsed and transferred to a non-resident of Kansas, and by subsequent indorsement and transfer became the property of the plaintiff. The limitation laws of Missouri bar an action upon a promissory note ten years after the cause of action thereon accrues. The principal defendants are the heirs of Francis M. Bruner, who purchased the land from Charles Veatch, subject to the mortgage. They are all residents of the state of Iowa and have resided there continuously. The defense relied upon is the statute of limitations. The answer alleged that the cause of action for the foreclosure of the mortgage arose at the time the note became due and was therefore barred by the five-year statute of limitation; that the cause of action upon the note arose in Missouri, where the makers resided at the time the note matured; and the provisions of the Missouri statute of limitations were set out. Section 22 of the civil code, in so far as it is directly involved, reads as follows:

"Where the cause of action has arisen in another state or country, between non-residents of this state, and by the laws of the state or country where the cause of action arose an action cannot be maintained

thereon by reason of lapse of time, no action [can be] maintained thereon in this state." (Gen. Stat. 1901, § 4450.)

In its last analysis the case turns upon the meaning of the words "cause of action has arisen" and "cause of action arose," as used in the foregoing section. The trial court construed the word "arisen" to mean "originate," and upon this construction based its ruling; and it is the contention of the plaintiff that the cause of action in this case arose within the state of Kansas, where the contract was made, and that section 22 has no application, but that section 21 of the code applies. The latter section reads as follows:

"If when a cause of action accrues against a person he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if after the cause of action accrues he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought." (Gen. Stat. 1901, § 4449.)

There is a conflict of authority upon the precise question involved, and it has never, we believe, been decided in this state. Some courts in construing statutes containing the exact language of ours, and others in construing statutes of almost identical language, have held that a different meaning attaches to the words "cause of action has arisen" as used in section 22 and the words "cause of action accrues" as used in section 21. These courts have declared that a cause of action arises when and where the transaction occurs from which it originates; that is, where the contract is made. (See the following authorities: *Chevrier v. Robert,* 6 Mont. 319, 12 Pac. 702; *John Shillito Co. v. Richardson,* 102 Ky. 51, 42 S. W. 847; *Powers Mercantile Co. v. Blethen,* 91 Minn. 339, 97 N. W. 1056; *Doughty, Receiver, v. Funk,* 15 Okla. 643, 84 Pac. 485,

4 L. R. A., n. s., 1029.)   The Oklahoma statute, construed in the last-named case, is copied literally from the Kansas statute, and the opinion which cites the cases upholding this view presents the reasons thereof as well as any to which our attention has been called.

The decisions referred to are against the better reasoning, in our opinion, and unquestionably opposed to the great weight of authority.   The phrase "cause of action" has often been defined.   It cannot exist without the concurrence of a right, a duty and a default, or, stated differently, an obligation must exist upon one party in favor of the other, the performance of which is refused.   Bouvier defines it as a right to bring an action.   To the same effect see *Bucklin v. Ford,* 5 Barb. (N. Y.) 393; *Meyer v. Van Collem,* 28 Barb. (N. Y.) 230; *Lewis v. Hyams,* 26 Nev. 68, 63 Pac. 126, 64 Pac. 817, 99 Am. St. Rep. 677.   "Cause of action is the right to prosecute an action with effect."   (*Douglas v. Forrest,* 4 Bing. [Eng.] 686, 704.)   In *Veeder v. Baker,* 83 N. Y. 156, the phrase was defined as follows:

"It may be said to be composed of the right of the plaintiff and the obligation, duty or wrong of the defendant; and these combined, it is sufficiently accurate to say, constitute the cause of action."   (Page 160.)

Pomeroy, in section 347 of the fourth edition of his Code Remedies, uses the following language:

"Every judicial action must therefore involve the following elements: a primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself.   Every action, however complicated or however simple, must contain these essential elements. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the

codes of the several states. They are the legal cause or foundation whence the right of action springs."

Many other definitions by courts and text-writers which are substantially the same may be found collated in the able dissenting opinion of Mr. Justice Young in *Mortgage Co. v. Northwest Thrasher Co.,* 14 N. Dak. 147, 164, 103 N. W. 915, 70 L. R. A. 814.

It would be difficult to find a better or more apt statement of where and when a cause of action arises than is found in the following extract from the opinion in *Durham v. Spence,* L. R. 6 Ex. (Eng.) *46:

"Now, the cause of action must have reference to some time as well as to some place; does then the consideration of the time when the cause of action arises give us any assistance in determining the place where it arises? I think it does. The cause of action arises when that is not done which ought to have been done, or that is done which ought not to have been done. But the time when the cause of action arises determines also the place where it arises; for when that occurs which is the cause of action, the place where it occurs is the place where the cause of action arises." (Page 52.)

In *Patterson v. Patterson,* 59 N. Y. 574, 17 Am. Rep. 384, the court said:

"Nor is there room for difference as to what is meant by the phrases 'cause of action has accrued' or 'cause of action has arisen,' since the death of the testator. They do not mean the contracting of the indebtedness, for a cause of action does not accrue or arise from the making of the contract of indebtedness alone, but out of the non-performance of it as well." (Page 578.)

In *Lewis v. Hyams,* 26 Nev. 68, 63 Pac. 126, the same question was involved, and it was there held that the phrase "when the cause of action has arisen" means exactly the same as if the statute had said "when a cause of action has accrued." In a further opinion upon an application for a rehearing it was stated that after an exhaustive and careful reexamination the court was unable to reach a different conclusion. (*Lewis v. Hyams,* 26 Nev. 82, 64 Pac. 817.)

The New York code of civil procedure provides that an action may be maintained by one foreign corporation against another "where the cause of action arose within the state." The words "where the cause of action arose within the state" were construed in *Shelby Steel Tube Co. v. Burgess Gun Co.*, 8 N. Y. Supr. Ct., App Div., 444, 40 N. Y. Supp. 871. The goods were ordered by letter from Buffalo. The acceptance was in the state of Ohio. The court, after stating that the contract was actually made in Ohio, used the following language:

"It does not follow, however, that because the contract was not made within this state a cause of action could not arise here. No cause of action arose anywhere upon this contract until the defendant had made some default in the payment of the contract price of the goods purchased." (Page 448.)

The statute of Washington is substantially the same as ours. It was construed in reference to these phrases in the case of *Freundt v. Hahn*, 24 Wash. 8, 63 Pac. 1107. The contention there was that the words "has arisen" and "arose" were used in the sense of originated and with a meaning entirely different from "accrued" as used in the other section. The court in a well-considered opinion construed the words to mean the same thing, and that the cause of action arose where and at the time it accrued. (To the same effect see the following cases: *Osgood v. Artt*, 10 Fed. 365; *Hower v. Aultman*, 27 Neb. 251, 42 N. W. 1039; *Minneapolis Harvester Works v. Smith*, 36 Neb. 616, 54 N. W. 973; *Harrison v. The Union National Bank*, 12 Neb. 499, 11 N. W. 752; *Luce v. Clarke*, 49 Minn. 356, 51 N. W. 1162; *Drake v. Bigelow*, 93 Minn. 112, 100 N. W. 664; *Orr v. Wilmarth*, 95 Mo. 212, 216, 8 S. W. 258; *Zoll v. Carnahan*, 83 Mo. 35; *Scroggs v. Daugherty*, 53 Mo. 497; *Frost v. Witter*, 132 Cal. 421, 64 Pac. 705, 84 Am. St. Rep. 53; *Strong v. Lewis*, 204 Ill. 35, 68 N. E. 556.)

The transaction by which a promissory note is exe-

cuted and delivered creates no cause of action, nor can a cause of action be said to originate thereby. If, as in the vast majority of instances, the note is promptly paid at maturity no cause of action exists. If there be a default when the note matures, and the payee is dead, no cause of action exists until an administrator is appointed, for the reason that before there can be a cause of action there must be a party entitled to enforce some obligation owing to him by some one who refuses to perform. In a case where the note is not paid when it matures, and the payee is alive, or, if dead; there is a personal representative, a cause of action arises out of the failure of the payor to perform the obligation. The place where it arises is the place where some court has jurisdiction of the subject-matter and the party against whom the cause of action has arisen. The cases referred to holding that the cause of action arises where the contract was entered into ignore the true definition of a cause of action and confuse it with the subject of the action. The execution of the note is but a part of the transaction out of which the cause of action arises; the failure to keep the obligation and to perform the promise is the main thing which creates the cause of action, and unless there be such a failure no cause of action ever arises.

"The true test, therefore, to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result." (25 Cyc. 1067.)

In the language of the court in *Freundt v. Hahn*, 24 Wash. 8, 63 Pac. 1107, "if the notes had been paid at maturity, no legal cause of action would have existed. It could neither have originated nor arisen until the breach of the contract to pay the money." (Page 11.)

A cause of action cannot be said to have arisen until it actually exists. In other words, a cause of action has not arisen until it has accrued. The words are synonymous. The subject of the action in this case was the promissory note and mortgage. They were

executed in Kansas. The subject of the action originated in Kansas, but there was no cause of action until the maker failed to pay at maturity.

It is insisted that this construction destroys the effect of section 21; that the legislature by the use of different expressions in the two sections intended by section 21 to furnish protection to citizens of Kansas, and also to persons temporarily within the state with whom contracts should be executed in the state under Kansas laws; that by section 22 it was intended to provide protection for the citizens of this state who made contracts in another state with citizens of such other state upon which a cause of action arose in the other state. The same reason is assigned by the court in *Chevrier v. Robert,* 6 Mont. 319, 12 Pac. 702, for the holding in that case, and the same contention was urged in many of the other cases cited where the courts construed the two sections as we construe these.

We find no difficulty in giving to section 21 the effect and operation given to it every day and which it has always had. It applies only to cases where the defendant resides in the state when the cause of action accrues but is either out of the state or has absconded or concealed himself. It provides that the time of his absence or concealment shall not be computed in his favor.

In *Orr v. Wilmarth,* 95 Mo. 212, 8 S. W. 258, it was held that the provision of the Missouri statute, which is practically the same as our section 22, has no application to cases where the defendant was a non-resident when the cause of action accrued, and that the section corresponding with our section 21 only applies to those cases where the defendant resided in the state when the cause of action accrued, citing *Thomas v. Black,* 22 Mo. 330, *Scroggs v. Daugherty;* 53 Mo. 497, and *Fike v. Clark,* 55 Mo. 105.

We conclude, therefore, that as the action was barred by the statute of Missouri, where the cause of action arose, no action can be maintained thereon in

this state by reason of the provisions of section 22 of the code of civil procedure. It is unnecessary to cite authorities to the effect that, the note being barred, no action can be maintained upon the mortgage.

For these reasons the judgment is reversed and the cause remanded for further proceedings.